**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**


**ROBERT A. BRAYSHAW,**

      **Plaintiff,**

**vs.**                                 **Case No. 4:10cv272-SPM/WCS**

**OFFICER ANNETTE P GARRETT,
OFFICER MICHAEL E. DILMORE,
and the CITY OF TALLAHASSEE,**

      **Defendants.**

_____/


**SECOND REPORT AND RECOMMENDATION**

      Pending is a motion to dismiss filed by the individual Defendants, Dilmore and

Garrett, doc. 34, along with a memorandum of law, doc. 33. Plaintiff has filed a

response to the motion, doc. 36, as well as the memorandum of law, doc. 37. A report

and recommendation was recently entered on the motion to dismiss filed by the City of

Tallahassee. Doc. 45. This second report and recommendation addresses only the

motion to dismiss filed by Defendants Dilmore and Garrett.

**Plaintiff's amended complaint, doc. 6**

      Plaintiff filed his complaint under 42 U.S.C. § 1983 asserting the following claims

against Defendants Dilmore and Garrett: a state law claim for negligence (count I, p.

24); a gross negligence claim (count II, p. 25); § 1983 federal claims for failure to

properly supervise and train (count III, pp. 27-30), false arrest, retaliation, and malicious prosecution (count IV, pp. 30-32), conspiracy (count V, pp. 32-33), racketeering (count VII, pp. 34-35), malicious prosecution claim only against Defendant Garrett (count VIII, pp. 35-37); and other state law claims (counts IX-X, pp. 33-34, 37-40). Plaintiff has agreed with this reading of the amended complaint, *see* doc. 36, pp. 1-2, explaining that count X "should be treated as a state law claim for loss of consortium."

Plaintiff alleges that in April and May, 2007, Defendant Garrett (a police officer) was investigating a reported trespass. Doc. 6, p. 2. At that time, Plaintiff and his wife (who is not a party in this case), were property managers at the Dakota Apartments. *Id.*, at 2-3. Plaintiff claims Defendant Garrett harassed him during the investigation, and that the investigation was unreasonably long. *Id.*, at 3-4. Plaintiff suggests that Defendant Garrett intentionally extended the investigation for two months to harass Plaintiff and his family. *Id.*, at 4. Plaintiff was not arrested, and the trespassing case was not prosecuted. *Id.* (Defendants point out that "[n]o criminal charges were ever filed against Plaintiff as a result" of this 2007 investigation. Doc. 33, p. 2.)

On May 12, 2008, police arrived at Plaintiff's home to arrest Plaintiff for another offense, a violation of FLA. STAT. § 843.17, but Plaintiff states that he was at the hospital at the time.[1] *Id.*, at 5. At 1:00 a.m. on May 13th, Plaintiff surrendered himself at the Leon County Jail, and was booked "for publishing an address of an officer on the web"

---

[1] Defendants' memorandum clarifies that in March, 2008, Plaintiff published Defendant Garrett's home address and other personal information on the website, Ratemycop.com. Doc. 33, p. 2. Defendant Dilmore conducted an investigation to determine whether there was probable cause to believe that Plaintiff's actions violated § 843.17. *Id.* He concluded that probable cause existed and Leon County Judge Augustus Aikens issued an arrest warrant. *Id.*

which Plaintiff states occurred approximately one month prior to his arrest. *Id.*, at 5.

Allegedly, Defendant Garrett "targeted" Plaintiff and "labeled him an 'Anti-Police

Problem for Written Complaints' with the aid of her fellow Officer, [Defendant] Dilmore."

*Id.* Plaintiff contends these two Defendants "are not tolerate [sic] of criticism or

questioning with the 'Blue Wall' supported by their partners in crime." *Id.*, at 6. Plaintiff

alleges that he began to be harassed by Defendant Garrett and "her buddies" because

Plaintiff was critical of the manner in which Defendant Garrett handled the April, 2007,

trespassing investigation. *Id.*, at 6-7. The amended complaint indicates[2] that Plaintiff

posted "public and truthful information" on the internet about Defendant Garrett,

including her home address. *Id.*, at 7-8. Based on that posted information, Plaintiff was

arrested and charged with two crimes. *Id.*, at 16. Plaintiff indicates state court Judge

Aikens "had no legal justification" to issue an arrest warrant which was based on

Defendant Dilmore's false probable cause affidavit, and the case against Plaintiff was a

conspiracy aimed at destroying Plaintiff and his wife's lives. *Id.*, at 14-15.

Plaintiff contends that both Defendants Dilmore and Garrett were acting for

"political revenge" against Plaintiff to "punish" him for his criticism of the officers. *Id.*, at

12. Plaintiff alleges much bias and prejudice against him, from the police, prosecutors,

public defenders, and state court judges assigned to Plaintiff's case. *Id.*, at 12-13.

Plaintiff surmises that there must have been "crude, ex parte attempts with the

prosecutors and/or judges to influence or compromise the case" and the prosecution of

---

[2] Plaintiff does not readily admit having posted the information in the amended complaint, but that fact is clear in other filings by Plaintiff. *See* doc. 23, p. 13.

Plaintiff was part of "a 'good ol' boy network' of government connections . . . ." *Id.*, at 15-16.

Plaintiff's case was set for trial on December 9, 2008. *Id.*, at 21. Without explaining clearly what happened, Plaintiff suggests the action resulted in a "bona fide termination in" Plaintiff's favor. *Id.*, at 35. Plaintiff alleges that the "whole ordeal . . . was an attempt to punish and financially ruin a family of Tallahassee citizens that was often too critical of [Defendant Garrett] as an Officer paid by tax payer's income." *Id.*, at 22. Plaintiff seeks general damages, punitive damages, treble damages and all remedies and relief available to him for the circumstances alleged. *Id.*, at 40.

## Motion to Dismiss, doc. 34

Defendants Garrett and Dilmore seek dismissal of the state law claims for negligence and gross negligence in counts I and II because "as City employees, each [Defendant] is immune from suit pursuant to Florida Statute § 768.28(9)(a)." Doc. 34, pp. 1-2. They seek dismissal of counts III, IV, and V on qualified immunity grounds. *Id.*, at 2. Defendants seek dismissal of counts III, VI, VII, VIII, IX, and X for failure to state a claim upon which relief may be granted. *Id.*, at 3. They argued that count V should be dismissed on the basis of the "intracorporate conspiracy doctrine." *Id.* Further, the Defendants contend that the "official capacity" claims against them should be dismissed as redundant because Plaintiff also brought this case against the City of Tallahassee.

Defendants note that there were two underlying criminal cases brought against Plaintiff. Doc. 34, p. 4. The first was *State v. Brayshaw*, case 2008MM2752 and the second case was *State v. Brayshaw*, case 2008MM7297. *Id.* Defendants have attached five exhibits to the motion to dismiss, and assert that the exhibits may be

considered on a motion to dismiss without the need to convert the motion into a summary judgment motion under Rule 56 because Fed. R. Evid. 201(f) permits judicial notice to be taken at any time. *Id.*, at 4. Defendants contend that these are uncontested facts and note that Plaintiff references his first case in his amended complaint. *Id.* Plaintiff does not dispute the underlying state criminal cases brought against him. Doc. 36, p. 3. Plaintiff indicates his willingness for the Court to take judicial notice of those facts and Plaintiff does not dispute the authenticity of the documents. Doc. 36, p. 4, n.4.

Defendants also make clear in the motion to dismiss that after Plaintiff turned himself in at the Jail, he was booked and released on bond. Doc. 33, pp. 2-3. Plaintiff was charged by Information of violating FLA. STAT. § 843.17. *Id.*, at 3. On December 9, 2008, the State "dismissed the charges against Plaintiff but re-filed those charges on December 18, 2008." *Id.* "On April 15, 2009, the criminal charges were dismissed with prejudice because the State failed to comply with Fla. R. Crim. P. 3.91 (speedy trial requirements)." *Id.* Subsequently, Plaintiff initiated a civil rights case in federal court challenging the Constitutionality of FLA. STAT. § 843.17. *Id.* On April 30, 2010, the statute was declared unconstitutional on its face by the District Judge Smoak. *Id.*

**Standard of Review**

In reviewing a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted, the court must consider whether the plaintiff has alleged enough plausible facts to support the claim stated. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that

dismissal should not be ordered unless it appears beyond doubt that plaintiff could prove "no set of facts" in support of his claims which would entitle him to relief).  The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."); *see also* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)(holding no heightened pleading standard may be used against municipality defendants).  A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.  Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

A court must accept the factual allegations of the complaint as true, Shotz v. American Airlines, Inc., 420 F.3d 1332, 1334-35 (11th Cir. 2005), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."

Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  Nevertheless, a

complaint must provide sufficient notice of the claim and the grounds upon which it rests

so that a "largely groundless claim" does not proceed through discovery and "take up

the time of a number of other people . . . ."  Dura Pharmaceuticals, Inc. v. Broudo, 544

U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at

1966.

> A district court considering a motion to dismiss shall begin by identifying
> conclusory allegations that are not entitled to an assumption of truth-legal
> conclusions must be supported by factual allegations. The district court
> should assume, on a case-by-case basis, that well pleaded factual
> allegations are true, and then determine whether they plausibly give rise to
> an entitlement to relief.

Randall v. Scott, 610 F.3d 701, 709 -710 (11th Cir. 2010).

Analysis of a motion to dismiss is generally limited to the face of the complaint

and any attachments.  Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d

1364, 1368-69 (11th Cir. 1997), *citing* 5 Charles A. Wright & Arthur Miller, Federal

Practice and Procedure § 1356 at 590-92 (1969) (Wright & Miller).  "However, where the

plaintiff refers to certain documents in the complaint and those documents are central to

the plaintiff's claim, then the Court may consider the documents part of the pleadings for

purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to

the motion to dismiss will not require conversion of the motion into a motion for

summary judgment."  Brooks, 116 F.3d at 1369, *quoting* Venture Assoc. Corp. v. Zenith

Data Sys. Corp., 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant

attaches to a motion to dismiss are considered part of the pleadings if they are referred

to in the plaintiff's complaint and are central to her claim."); *see also* Beddall v. State

Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  Guiding the decision of whether the court may consider an extrinsic document in ruling on a motion to dismiss is if the document is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.  Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also* Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337, 1340 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.").  Harris v. Ivax Corp., 182 F.3d 799, 801 n. 2 (11th Cir. 1999) ("But a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute.").

Even though Defendants have attached documents to their motion to dismiss, Plaintiff refers to these documents in his complaint and does not dispute their authenticity.  Thus, this motion need not be converted a motion for summary judgment and this court may consider the documents in ruling upon this motion to dismiss.

**Federal claims**

**Official Capacity, Count III**

Defendants argue that Plaintiff's claim against them in their official capacities in count III must be dismissed.  Defendants assert that a claim against municipal officers sued in their official capacities is a claim against the municipality itself and is redundant since the City was also sued.  Doc. 33, pp. 5-6.  Defendants contend that count III should be dismissed as to them with prejudice.  *Id.*, at 6.  Plaintiff argues that in count III, he has alleged "plausible facts to support his claim of supervisory liability."  Doc. 36, p. 2.  Plaintiff also contends that his official capacity claims against Defendants Garrett

and Dilmore should not be dismissed as redundant "because they are not entitled to any qualified immunity while acting in bad faith and with malice with the writing of false police reports." *Id.*, at 3. Plaintiff notes these individuals were never sued by Plaintiff in his prior federal litigation challenging FLA. STAT. § 843.17. *Id.*

A suit against a municipal officer is a suit against the municipality. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991), citing Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). There is no need to bring official-capacity actions against local government officials because the local government unit can be sued directly. Graham, 473 U.S. at 166, 105 S.Ct. at 3105; *see* Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that local governmental units are "persons" for purposes of § 1983 suits). Plaintiff has done so here. The official capacity claims against Garrett and Dilmore are redundant and count III should be dismissed.[3]

Moreover, count III fails to state a claim against the officers because Plaintiff does not allege how the individual Defendants failed to supervise or train others not in keeping with any identifiable policy, or how they implemented a City policy. Grech v. Clayton County, 335 F.3d 1326, 1329 (11th Cir. 2003), *citing* Monell, 436 U.S. at 690-91, 694; Brown v. Neumann, 188 F.3d 1289, 1290 (11th Cir. 1999).

**Count IV, qualified immunity**

Plaintiff was arrested and charged with violating § 843.17. That statute provides:

---

[3] The claim should also be dismissed for the reasons that the claims against the City should be dismissed. The claims against the City, or against City employees in their official capacity, are barred by *res judicata*. Doc. 45.

> Any person who shall maliciously, with intent to obstruct the due execution of the law or with the intent to intimidate, hinder, or interrupt any law enforcement officer in the legal performance of his or her duties, publish or disseminate the residence address or telephone number of any law enforcement officer while designating the officer as such, without authorization of the agency which employs the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

FLA. STAT. § 843.17.

Defendants seek dismissal of all of the claims in count IV due to qualified immunity. Doc. 33, p. 8. These claims are based on allegations of retaliatory conduct, false arrest and imprisonment, malicious prosecutions, and abuse of process. Doc. 6, p. 30. All of these claims are based on the arrest of Plaintiff for violating FLA. STAT. § 843.17 for posting of the home address and other information about Defendant Garrett on the "Ratemycop.com" website. Doc. 33, p. 8. As noted above, an arrest warrant was issued by Judge Aikens, Plaintiff self-surrendered, and an Information was filed on August 27, 2008. Doc. 33, p. 9. Thereafter, the State dismissed the case on December 9, 2008, and then filed another Information which recharged Plaintiff with violating § 843.17. That case was dismissed on April 15, 2009, on speedy trial grounds. *Id.*

"The purpose of the qualified immunity defense is to protect[ ] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009), *quoting* Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), *quoted in* Youmans v. Gagnon, 626 F.3d 557, 562 (11th Cir. 2010). "The defense of qualified immunity "ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful." Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151,

2158, 150 L.Ed.2d 272 (2001). "*Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing*, the government actor has immunity from suit." Lassiter v. Ala. A&M Univ., Bd. of Trs., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (emphasis added, *quoted in* Youmans, 626 F.3d at 562.

Once a defendant raises the defense of qualified immunity, the Plaintiff "bears the burden of establishing both that the defendant committed a constitutional violation *and that the law governing the circumstances was already clearly established at the time of the violation*." Youmans, 626 F.3d at 562, *citing* Pearson, 129 S.Ct. at 815-16 (emphasis added). These elements may be considered in either sequence and failure to show either element is dispositive. Pearson, *Id.* at 818.

Plaintiff's claims in count IV depend entirely upon the argument that § 843.17 did not apply to Plaintiff's situation because his website postings were not malicious or threatening, and because the statute was declared unconstitutional by the District Judge Richard Smoak. Doc. 36, p. 4.

The probable cause affidavit states that Officer Garret told Officer Dilmore that she had investigated Plaintiff in the past. Doc. 34, Ex. B, p. 1 (doc. 34-2, p. 15 on ECF). Plaintiff posted personal information about Garrett on March 31, 2008. *Id.* The posting included Garrett's name, age, information about her residence, her personal cell phone number, her personal email address, the names, address, and home phone of her parents, and links to websites with photographs of Garrett and her children.[4] *Id.*

---

[4] Defendant Dilmore's probable cause affidavit reveals that postings were made to the website ratemycop.com revealing Defendant Garrett's home address, information about her house, her personal phone number and the like. Doc. 34-2 (Exhibit B). The

Plaintiff alleges in his complaint that he thought the trespass investigation in 2007 by Garrett was false, harassment, and unlawful.  Doc. 6, pp. 2-4.  While that investigation was a year earlier, a plausible inference arises from these allegations that Plaintiff's internet posting concerning Garrett was motivated by his criticism of her interactions with him as she investigated the trespass allegations a year earlier, and that postings were done "maliciously, with intent to obstruct the due execution of the law or with intent to intimidate, hinder, or interrupt any law enforcement officer in the legal performance of his or her duties" as set forth in FLA. STAT. § 843.17.  Moreover, even if the posting were not plausibly connected with the trespass investigation a year earlier, the publication of information that would allow anyone to find Garrett or her family, or to contact her through her private means of receiving communications, is, on its face, designed to intimidate Garrett in her current law enforcement work.  It is one thing to publish criticism of the performance of a public servant, and quite another to publish information that could assist someone to find Defendant Garrett and harm her or her family.  A reasonable officer would believe that the posting violated the statute.

---

website's owner produced the IP address of the user who logged in and posted the information.  *Id.*  Defendant Dilmore obtained a subpoena for the website to release the information, which they did, showing it belonged to IP address 71.54.172.56, belonging to Embarq.  *Id.*  Defendant Dilmore then obtained a subpoena to obtain information from Embarq as to the customer with the IP address on the dates and times the posting was made.  *Id.*  The result was information that "the IP address was assigned to their customer named Robert Brayshaw during the times the postings were made."  Plaintiff was provided the information concerning obtaining the IP address by Defendant Dilmore.  *Id.*  Further, during the investigation Defendant Dilmore met personally with Plaintiff to interview him and Plaintiff's "entire demeanor and expressions appeared to be ones of guilt and deception" to Defendant Dilmore.  *Id.*

Judge Smoak's opinion in <u>Brayshaw v. City of Tallahassee</u>, case no: 4:09cv373-RS-WCS, was entered on April 30, 2010, *see* doc. 37, p. 4, well after Plaintiff's state court case was dismissed. Judge Smoak held that Florida § 843.17 was unconstitutional as it was not "narrowly tailored to serve a compelling government interest." <u>Brayshaw v. City of Tallahassee</u>, 709 F.Supp.2d 1244, 1250 (N.D.Fla. 2010). Plaintiff has come forward with no court decisions prior to that date which would have given reasonable notice to Defendants Dilmore and Garrett that this statute was unconstitutional.

Both Defendants are protected by qualified immunity from liability for damages in their individual capacities for all claims alleged in count IV. If the court so finds, it need not address the argument that the complaint fails to state claims upon which relief may be granted. In the interests of completeness, however, it is recommended that the court also find that the claims are insufficiently alleged. The subsidiary claims arising in count IV will be addressed ahead.

**Count IV, false arrest**

Plaintiff alleged in count IV that he was subjected to false arrest and imprisonment, malicious prosecutions, and abuse of process, and that Defendants violated his First Amendment right to free speech in their retaliatory conduct.

A claim for false arrest, which is the same as false imprisonment, is premised on rights guaranteed by the Fourth Amendment of the United States Constitution, "to be free from 'unreasonable searches and seizures' . . . [and] an arrest is a seizure of the person." <u>Case v. Eslinger</u>, 555 F.3d 1317, 1326 (11th Cir. 2009), *quoting* <u>Skop v. City of Atlanta</u>, 485 F.3d 1130, 1137 (11th Cir. 2007). The 'reasonableness' of an arrest

"turns on the presence or absence of probable cause." <u>Case</u>, 555 F.3d at 1326. A police officer must have probable cause to arrest an individual without a warrant, and the existence of probable cause is an absolute bar to a civil rights claim for false arrest. <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1226 (11th Cir. 2004); <u>Rodriguez v. Farrell</u>, 280 F.3d 1341, 1345 (11th Cir. 2002).

Probable cause exists when a police officer has facts and circumstances within his knowledge "sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." <u>United States v. Gonzalez</u>, 969 F.2d 999, 1002 (11th Cir. 1992), *quoted in* <u>Case</u>, 555 F.3d at 1327; *see also* <u>United States v. Floyd</u>, 281 F.3d 1346, 1348 (11th Cir. 2002); <u>Rankin</u>, 133 F.3d at 1433. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." <u>Illinois v. Gates</u>, 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335 n.13, 76 L.Ed.2d 527 (1983), *quoted in* <u>Case</u>, 555 F.3d at 1327.

Even if probable cause was lacking, a police officer is protected from liability if "arguable probable cause existed." <u>Case</u>, 555 F.3d at 1327. In <u>Pickens v. Hollowell</u>, 59 F.3d 1203 (11th Cir. 1995), the court considered whether deputies at the jail were protected by qualified immunity in arresting a visitor pursuant to a warrant when the statute of limitations had run at the time the arrest was made. The Court noted the case of <u>Baker v. McCollan</u>, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), where the plaintiff had been arrested and jailed for three days before the sheriff discovered the wrong man had been imprisoned. *Id.*, at 141, 99 S.Ct. at 2693. The Supreme Court rejected the plaintiff's argument that the sheriff's failure to investigate his protests of misidentification constituted a violation of due process, and explained:

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.... The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

*Id.,* at 145-46, 99 S.Ct. at 2695; *quoted in* Pickens v. Hollowell, 59 F.3d at 1207. Thus, the Baker decision provides that where a law enforcement officer has sufficient facts to constitute probable cause, he does not "have a duty to investigate and decide the potential viability of a defense" before making an arrest. Pickens, 59 F.3d at 1207.

FLA. STAT. §843.17 was enacted in 1972, as Plaintiff has argued. Plaintiff asserts that the statute was not applicable to him because the posting was not malicious or done with the intent to intimidate, hinder, or interrupt the officer's duties. That argument has been addressed above. The complaint and the probable cause affidavit give rise to a reasonable inference that Plaintiff violated the statute. Further, a law enforcement officer need not determine intent where, as here, the other provisions of the statute are established. Police officers are not expected to be lawyers determining *mens rea. See* Drudge v. City of Kissimmee, 581 F.Supp.2d 1176, 1192 (M.D. Fla. 2008) (noting that where the "assistant state attorney did not notice anything in the statute that would render it inapplicable," it is a reasonable conclusion for a police officer to not make that determination either). On its face, the statute reasonably appears to cover the posting Plaintiff made on the website. Defendants had probable cause, and certainly had arguable probable cause. Where an officer has conducted a "reasonable investigation" and, under the totality of the circumstances, has gained knowledge of facts from a reasonably trust-worthy source that would cause a prudent person to believe the

suspect has committed a crime, the officer has probable cause.  Williamson v. Mills, 65

F.3d 155, 158 (11th Cir. 1995); Bailey v. Board of County Comm'rs of Alachua County,

956 F.2d 1112, 1119 (11th Cir.), *cert. denied*, 506 U.S. 832 (1992).  Here, there was

probable cause to arrest Plaintiff based on the information obtained.  Probable cause

vitiates any Fourth Amendment claim.  The false arrest claim must be dismissed.

### Count IV, malicious prosecution

The only prosecution alleged is the prosecution for violating FLA. STAT. § 843.17.

Florida law governs a § 1983 claim based on malicious prosecution.[5]  Eidson v.

Arenas, 910 F. Supp. 609, 613 (M.D. Fla. 1995); Uboh v. Reno, 141 F.3d 1000,

1004 (11th Cir. 1998).  Under Florida law, to prevail in a malicious prosecution

action a plaintiff must establish: (1) an original criminal or civil judicial proceeding

was commenced against the plaintiff;  (2) the defendant was the legal cause of the

original proceeding against the plaintiff;  (3) a bona fide termination of the original

proceeding in favor of the plaintiff;  (4) *an absence of probable cause for the original*

*proceeding*;  (5) the presence of malice on the part of the defendant; and (6) the

plaintiff suffered damage as a result of the original proceeding.  Alamo Rent-A-Car,

Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994) (emphasis added); *see also*

Heck v. Humphrey, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371, 129 L. Ed. 2d 383

(1994) (finding "[o]ne element that must be alleged and proved in a malicious

prosecution action is termination of the prior criminal proceeding in favor of the

accused.").  A plaintiff's inability to satisfy any one of these six elements defeats the

---

[5] The right to be free from malicious prosecution is founded upon the Fourth
Amendment.  Uboh v. Reno, 141 F.3d 1000, 1003 (11th Cir. 1998).

action.  Alamo, 632 So. 2d at 1355; Scozari v. Barone, 546 So. 2d 750, 751 (Fla. 2d DCA 1989).  Since probable cause existed for issuance of the arrest warrant and prosecution of Plaintiff, the malicious prosecution claim fails.

Additionally, demonstration of the bona-fide termination requirement also precludes this claim.  The "favorable termination" element may be satisfied either by a favorable decision "on the merits" or a bona fide termination of the proceedings. Union Oil of California Amsco Div. v. Watson, 468 So. 2d 349, 353 (Fla. 3d DCA 1985).  "Bona fide" means "the termination was not bargained for[6] or obtained by the accused upon a promise of payment or restitution."  Union Oil, 468 So. 2d at 353, n. 3; Freedman v. Crabro Motors, Inc., 199 So. 2d 745 (Fla. 3d DCA 1967).  In criminal cases, it is well established that only terminations indicating "that the accused is innocent" are considered favorable.  Uboh, 141 F.3d at 1004, citing Hilfirty v. Shipman, 91 F.3d 573, 580 (3rd Cir.1996); Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994).  "Similarly, courts have refused to permit a finding of favorable termination where the stated basis for the dismissal of criminal charges has been 'in the interests of justice' . . .  or where a conviction has been reversed and the cause expressly remanded for retrial."  Uboh, 141 F.3d at 1004-05, citing Brandley v. Keeshan, 64 F.3d 196, 199 (5th Cir.1995).

Here, the original charges were dismissed, refiled, and ultimately dismissed on speedy trial grounds.  Dismissal on speedy trial grounds does not indicate that

---

[6] If "the bargaining constitutes nothing more than a promise to pay what was offered before the charges were brought, and the negotiations reflect the accused's innocence, then the termination would still be bona fide."  Alamo, 632 So. 2d at 1356.

Plaintiff was innocent, and, therefore, is not a circumstance that constitutes favorable termination.

### Count IV, retaliation

Plaintiff's claim is that his arrest was made because of a retaliatory motive of Defendant Garrett. Even if Garrett had a retaliatory motive, this First Amendment claim of retaliatory prosecution since there was a probable cause for the arrest. Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003) (holding there is no Fourth Amendment claim separate from a false arrest or malicious prosecution claim, and that a "retaliatory prosecution claim [is] defeated by the existence of probable cause"); *see also* Hartman v. Moore,[7] 547 U.S. 250, 260, 126 S.Ct. 1695, 1704 (2006) (noting that "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."). Furthermore, there are no allegations which provide plausible facts to show that Defendant Garrett's subjective motive was the motivating force behind Defendant Dilmore's investigation. Even without the defense of qualified immunity, this claim fails.

---

[7] This case also points out the difficulty in demonstrating a causal connection between the retaliatory animus of law enforcement and the decision by a prosecutor to initiate criminal proceedings. Hartman, 547 U.S. 250, 261-265. Whether or not a retaliatory motive existed by the police, an independent assistant state attorney found enough probable cause to initiate the criminal proceedings against Plaintiff. Moreover, as Plaintiff has pointed out, his state prosecution involved three different assistant state attorneys who pursued the prosecution against Plaintiff. Doc. 37, p. 5.

**Count IV, abuse of process**

Plaintiff's claim for "abuse of process" is not well defined or explained by Plaintiff, but seems to be the same as the malicious prosecution claim.[8] *See* doc. 37, p. 8. It fails for the reasons set forth above.

**Count IV, conspiracy**

Plaintiff alleged in count V that all Defendants were acting "in concert to violate" Plaintiff's constitutional rights. Doc. 6, pp. 32-33. Defendants seek dismissal of this claim based on the "intracorporate conspiracy doctrine."[9] Doc. 33, pp. 17-18. "[T]he intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) ( en banc), *quoted in* Grider v. City of Auburn, 618 F.3d 1240, 1261 (11th Cir. 2010). The doctrine provides that a "corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." McAndrew, 206 F.3d at 1036, *quoted in* Grider, 618 F.3d at 1261. The doctrine applies to public entities such as a city and its employees. Denney v. City of Albany, 247 F.3d 1172, 1190-91 (11th Cir. 2001) (holding that where the "only two conspirators identified" were both City employees, the intracorporate conspiracy doctrine barred plaintiffs' § 1985 conspiracy claims), *citing* Dickerson v.

---

[8] *See* Uboh v. Reno, 141 F.3d 1000, 1003, n. 4 (11th Cir. 1998) (a malicious prosecution claim is cognizable under the Fourth Amendment, similar to a false arrest claim).

[9] It is probably unnecessary to reach this issue since Defendants have qualified immunity and the individual federal claims that might have been the object of a conspiracy have not been alleged sufficiently.

Alachua County Comm'n, 200 F.3d 761, 768 (11th Cir. 2000); *see also* Rehberg v. Paulk, 611 F.3d 828, 854 (11th Cir. 2010) (stating that "intracorporate conspiracy doctrine bars conspiracy claims against corporate or government actors accused of conspiring together within an organization").     As was the case in Grider v. City of Auburn, 618 F.3d at 1262, because Defendants Garrett and Dilmore are law enforcement officers and "empowered precisely to prosecute violations of law," and because they are employed by the same entity, the conspiracy claims against them are barred by the intracorporate conspiracy doctrine.  The motion to dismiss should be granted on this claim as well.

**Count VII, RICO claim**

Count VII is a claim for racketeering brought pursuant to 18 U.S.C. § 1961.[10]  To establish a federal civil RICO violation, a must plaintiff allege four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th Cir. 2006) (internal quotation marks omitted), *quoted in* Edwards v. Prime, Inc., 602 F.3d 1276, 1291-92 (11th Cir. 2010).  Plaintiff alleges no facts which supply the necessary "conduct" as defined in § 1961.  Moreover, a "pattern" must be "at least two distinct but related predicate acts." Mohawk Indus., Inc., 465 F.3d at 1283, *quoting* Maiz v. Virani, 253 F.3d 641, 671 (11th Cir. 2001).  Plaintiff does not allege a pattern of conduct.  The motion to dismiss this claim should be granted as well.

---

[10] "Racketeering activity" is defined in 18 U.S.C. § 1961 as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . " and other acts related to bribery, theft, fraud, obstruction, and other such activity.

**Counts I, II, VI, VIII, IX, and X, state law claims**

The court has discretion to dismiss the remaining state law claims since the federal claims should be dismissed. Nevertheless, Defendants should not be put to the time or expense of again defending these claims in state court. As will be explained, the Court should dismiss the remaining state law claims as presented in counts I, II, VI, VIII, IX, and X because they fail to state a claim upon which relief may be granted.

Counts I and II of the amended complaint are claims for negligence and gross negligence against the individual Defendants. Defendants seek dismissal pursuant to Florida statute § 768.28(9)(a) contending that this state law provides immunity from suit because Defendants "were acting within the scope of their duties as employees of the City of Tallahassee . . . ." Doc. 33, p. 6.

Section 768.28 is not so broad as has been suggested. Subsection 9(a) of § 768.28 does not absolutely grant immunity for a city police officer. Rather, the statute actually provides that an officer, employee or agent of the State is not "personally liable in tort . . . *unless* such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." FLA. STAT. § 768.28(9)(a). Thus, an officer may be personally liable if he or she acted "outside the course and scope of his or her employment" or committed the act "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Id.*

Counts I and II, however, do not allege facts from which it might plausibly be concluded that Defendants acted in bad faith or malice. Plaintiff alleged in count I of

the amended complaint that Defendants owed Plaintiff "a duty of care . . . with respect to conducting constitutional criminal investigations." Doc. 6, p. 24. Plaintiff, however, fails to identify any constitutional violation made in the investigation.

Plaintiff contends that Defendants breached their duties by "failing to conduct the duties of their positions with reasonable care; failing to establish and implement proper policies, procedures and protocols governing the investigation . . . ." *Id.*, at 24-25. These are unsupported legal conclusions. There is no allegation of fact showing *how* or *why* either Defendant failed to take reasonable care in conducting a criminal investigation.

Plaintiff also asserts that his arrest was based on Defendant Dilmore's false police report, and was an act of "vengeance" by Defendants Garrett and Dilmore. Plaintiff does not, however, identify any false statement; rather he states his own belief that the report must have been fabricated because it referred to the "tracing" of a computer, but there had been no search and seizure of a computer. Doc. 6, p. 14; *see also* doc. 37, p. 2.[11] As explained above, the location of a computer, and subscriber information about the computer, were obtained through law enforcement investigation, not by seizing the computer. Further, Plaintiff has not shown that either Defendant falsified allegations concerning his violation of § 843.17. There is a significant difference between false allegations of fact and allegations of a violation of a statute that later is found to be unconstitutional. Count I fails to state a claim for negligence under FLA. STAT. § 768.28.

_____

[11] Plaintiff misunderstands that a computer's IP address may be traced showing the location of the computer where a posting originated and there is no need to actually seize the computer to obtain that information.

Count II is the claim for gross negligence, again related to Plaintiff's allegation that Defendants owed "a duty of care to Plaintiff with respect to conducting constitutional criminal investigations."  Doc. 6, p. 25.  The negligence claim in count I is insufficient.  It is even more apparent that the gross negligence claim in count II also fails as it requires a higher degree of negligence.  Plaintiff has not alleged any plausible facts to demonstrate either Defendant acted with gross negligence in conducting the criminal investigations or preparing police reports.  Count II should also be dismissed for failure to state a claim.

Count VI is a state law claim for false arrest and imprisonment, malicious prosecution, and abuse of power.  Under Florida law, probable cause is an affirmative defense to such claims.  Ball v. City of Coral Gables, 548 F. Supp. 2d 1364 (S.D. Fla. 2008).  Defendants had probable cause.  Moreover, Plaintiff alleged that he was "unlawfully detained . . . without lawful authority, without valid legal process . . . ."  Doc. 6, pp. 33-34.  That is incorrect as an arrest warrant was signed by State Judge Aikens.

Count VIII against Garrett is a duplicative claim for malicious prosecution.  It should be dismissed for the reasons provided above.

Count IX is a state law claim for "defamation, libel, slander, harassment."  Doc. 6, pp. 37-38. The basis for this claim is that Defendants made "false statements in complaints and reporting to the law enforcement agency, and/or attempts at judicial proceedings. . . _Id._ "Public officials who make statements within the scope of their duties are absolutely immune from suit for defamation."  Stephens v. Geoghegan, 702 So.2d 517, 522 (Fla 2d DCA 1997).  In upholding this immunity, the Stephens court quoted the justification for the grant of immunity as stated by the Florida Supreme

Court, that it is "in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." McNayr v. Kelly, 184 So.2d 428, n.12 (Fla. 1966). This privilege extends to police officers. Cassell v. India, 964 So.2d 190, 194 (Fla. 4th DCA., 2007). Defendants' motion to dismiss each of these repetitive claims should be granted because they have absolute immunity from suit for statements made within the scope of their duties.

Count X, the loss of consortium claim fails because it is a derivative claim that belongs to the spouse of the injured party, and not the injured person. See Food Fair, Inc. v. Anderson, 382 So.2d 150, 155 (Fla. 5th DCA, 1980); Pavolini v. Bird, 769 So.2d 410, 413 (Fla. 5th DCA 2000).

## Conclusion

It is respectfully **RECOMMENDED** that Defendants' motion to dismiss, doc. 34, be **GRANTED,** and all claims against Defendants Garrett and Dilmore in Plaintiff's amended complaint, doc. 6, be **DISMISSED with prejudice**. It is further recommended that if this report and recommendation and the last report and recommendation, doc. 45, are adopted, that the court direct the Clerk to enter judgment for Defendants.

**IN CHAMBERS** at Tallahassee, Florida, on January 6, 2011.


 S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.